IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SARA HOKE and AMANDA HOKE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:18-CV-232-RP |
| | § | |
| ROBERT ANDERSON, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is a motion for summary judgment by Defendants Robert Anderson, Lewis Holland, Seth Model, Jon Bundick, Quint Sebek, and Celestin Adam (collectively, "Defendants"), (Dkt. 47), and responsive briefing, (Dkts. 54, 56). Having considered the parties' submissions, the record, and the applicable law, the Court will grant Defendants' motion.

## I. BACKGROUND

This case concerns the use of pepper spray during a street brawl. Plaintiffs Sara and Amanda Hoke (collectively, "the Hokes") are twin sisters who went out one evening on 6th Street during the 2016 South by Southwest festival. (1st Am. Compl., Dkt. 2, ¶ 9). At 2:00 a.m., the bars on 6th Street closed, and thousands of patrons poured into the street. As she and her sister left a bar, Sara Hoke bumped into another woman, and a fight ensued. (*Id.* ¶ 10; Resp., Dkt. 54, at 14). Amanda Hoke joined in the fight. (1st Am. Compl., Dkt. 2, ¶ 10).

The Hokes allege that 17 officers responded to the fight, eight of whom surrounded the women fighting, and at least seven of whom deployed pepper spray. (*Id.* ¶¶ 11–13; Resp., Dkt. 54, at 15–16). Defendants sprayed the Hokes with pepper spray for several seconds. (1st Am. Compl., Dkt. 2, ¶ 13; Mot., Dkt. 47, at 3). After the fight ended, Defendants arrested the Hokes for disorderly conduct and took them to a building they were using as a staging area that night. (1st Am.

1

Compl., Dkt. 2, ¶ 17; Mot., Dkt. 47, at 4). There, the Hokes were given water to wash off the pepper spray. (Mot., Dkt. 47, at 4; Resp., Dkt. 54, at 17). They claim that both before and after they were given the water, they experienced intense pain from the pepper spray on several parts of their bodies. (1st Am. Compl., Dkt. 2, ¶¶ 17–18).

Based on these facts, the Hokes bring this action under 42 U.S.C. § 1983 against Defendants for violation of their Fourth and Eighth Amendment rights. They claim that Defendants used excessive force against and unreasonably arrested them. (*Id.* ¶¶ 28–31). Defendants assert that they are entitled to qualified immunity and that the evidence raises no genuine issue as to whether they used excessive force or wrongfully arrested the Hokes. (Mot., Dkt. 47, at 1). Defendants seek summary judgment on all of the Hokes' claims. (*Id.*).

## II. LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. That said, courts "give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)). A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* Even when considering a qualified immunity defense, however, the court must view the evidence in the light most favorable to the nonmovant and draw all inferences in the nonmovant's favor, *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *Reeves*, 530 U.S. at 150.

## III. DISCUSSION

The Hokes make three claims that Defendants used excessive force against them in violation of the Fourth Amendment: they (1) used "far more than a reasonable quantity of a chemical agent"; (2) deployed the chemical agent "without prior verbal command, or after the person was subdued and compliant;" and (3) "withheld irrigation and appropriate medical attention pre- and post-arrest." (1st Am. Compl., Dkt. 2, ¶¶ 29–31). The Hokes also claim that Defendants unreasonably arrested them in violation of the Fourth Amendment and that Defendants' decision to withhold irrigation also constitutes a violation of the Eighth Amendment. (*Id.* ¶¶ 28, 31).

Defendants assert that they are entitled to qualified immunity with respect to each of these claims. Whether an official is entitled to qualified immunity is a two-step inquiry. In the context of a motion for summary judgment, the Court must determine (1) whether the plaintiff has shown a violation of a constitutional right, and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court has discretion to decide which of the two steps to address first. *Id.* at 236. If there is no constitutional violation, the officer is entitled to qualified immunity from suit. *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003). As explained below, Defendants are entitled to summary judgment on each of the Hokes' claims.

### A. Amount of Pepper Spray Used

There are no disputed facts with respect to the Hokes' claim that Defendants used an unreasonable quantity of pepper spray. Each party asserts that Defendants sprayed the Hokes for several seconds. (1st Am. Compl., Dkt. 2, ¶ 13; Mot., Dkt. 47, at 13). The Hokes assert, and Defendants do not dispute, that at least seven officers sprayed the Hokes, one of whom used a Mark-9 canister capable of deploying a larger amount of pepper spray. (Resp., Dkt. 54, at 16). The

4

parties disagree, however, about whether the amount of spray used was reasonable in light of the circumstances of the altercation.

Whether a use of force is unconstitutionally excessive depends on the context in which the force was used. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). "To gauge the objective reasonableness of the force used by the law enforcement officer," the Court "must balance the amount of force used against the need for force." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)). The Hokes appear to make two arguments that the amount of pepper spray used by Defendants was excessive. First, they argue that "[t]he amount used was clearly excessive and unreasonable when the offense at issue was a Class C—fine only—misdemeanor." (Resp., Dkt. 54, at 22). They cite no authority for this categorical assertion, and the Court is aware of none. Instead, Fifth Circuit precedent suggests that there is no categorical rule prohibiting police officers from using pepper spray when responding to minor offenses. *See Singleton v. Darby*, 609 F. App'x 190, 196 (5th Cir. 2015) (officer's use of pepper spray against plaintiff engaged in "not particularly severe" Class B conduct was not objectively unreasonable). Moreover, a categorical rule would not make sense. A plaintiff engaged in not-particularly-severe conduct (for example, small-time shoplifting, a Class C offense) may still be belligerent in resisting arrest; in such cases, the use of pepper spray may be appropriate.

Second, the Hokes argue that the "large, muscular, male police officers" who responded to the scene "could have physically broken up the women fighting." (Resp., Dkt. 54, at 14, 21; 1st Am. Compl., Dkt. 2, ¶ 11). They thus appear to argue that Defendants' use of *any* pepper spray was unreasonable. Again, the Hokes point to no authority in support of this assertion, and the Court is aware of none. In any event, that Defendants could have resorted to physical force rather than use pepper spray does not render Defendants' decision to use pepper spray unreasonable. Whether a particular use of force is reasonable "must be judged from the perspective of a reasonable officer on

5

the scene, rather than with the 20/20 vision of hindsight," and this calculus "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). Defendants argue that they have all seen fights like the Hokes'—on Sixth Street in a "raucous and fast-changing environment" after the bars close during South by Southwest—"turn into larger fights," and they resorted to "using a method that they had found quick and effective in the past" at "suppress[ing] the fighting and stop[ping] it from growing." (Reply, Dkt. 56, at 10). The availability to Defendants of a supposedly non-excessive alternative type of force (physically breaking up the fight) does not mean the force to which they resorted (pepper spray) was necessarily unreasonable in light of the circumstances. Thus, even after drawing all inferences in favor of the Hokes, they have still failed to show that Defendants' use of pepper spray violated their constitutional rights.

Accordingly, the Court finds that the Hokes have failed to show that the amount of pepper spray used by Defendants violated their clearly established rights under the Fourth Amendment. Defendants are therefore entitled to qualified immunity with respect to this claim.

**B. Use of Pepper Spray Without Warning or After the Hokes Were Subdued**

Next, the Hokes claim that Defendants' use of pepper spray on them was excessive because Defendants did not blow their whistles first to stop the fighting, and Defendants continued to spray the Hokes after they were subdued. (1st Am. Compl., Dkt. 2, ¶ 30). These facts are disputed. Nevertheless, with respect to whether Defendants blew their whistles before deploying pepper spray, the Hokes have failed to show that lack of a warning before the use of pepper spray violates a clearly established constitutional right. The Hokes cite no authority in support of that claim, and the Court is aware of none. Moreover, the Hokes admit that "the whistles started after the first deployment of [pepper] spray," (Resp., Dkt. 54, at 15 n.10), and Defendants assert—and the Hokes

6

do not challenge—that the officer to first deploy pepper spray is not a defendant in this case, (Reply, Dkt. 56, at 5 n.4).

With respect to whether Defendants continued to spray the Hokes after they were subdued, the Hokes have abandoned this claim. Although the Hokes allege that "Defendants continued to spray their chemical agent onto the Hokes after the women were incapacitated," (1st Am. Compl., Dkt. 2, ¶ 16), they do not challenge Defendants' assertion that they ceased deploying pepper spray after the fighting stopped, and the Hokes admit in their own deposition testimony that no pepper spray was used after they stopped fighting. (Mot., Dkt. 47, at 4 (citing A. Hoke Dep., Dkt. 47-1, at 18; S. Hoke Dep., Dkt. 47-2, at 10; Pepper Spray Incident Video, Dkt. 47-3; Street Fight Video, Dkt. 47-4)). A party abandons a claim when it fails to respond to a challenge to that claim in a motion to dismiss or for summary judgment. *Tex. Capital Bank N.A. v. Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citing *Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned her claim because she failed to defend it in her response to the defendant's motion to dismiss and failed to pursue the claim beyond her complaint)).

Accordingly, the Court finds that Defendants are entitled to qualified immunity with respect to these claims.

### C. Insufficient Decontamination

The Hokes also claim that Defendants violated their Fourth and Eighth Amendment rights because they failed to properly "decontaminate" them after spraying them with pepper spray. (1st Am. Compl., Dkt. 2, ¶ 31; Resp., Dkt. 54, at 22–23). As an initial matter, the Hokes' Eighth Amendment claim cannot survive because the Eighth Amendment only applies to confinement conditions post-sentencing, not to conditions on pretrial detainees. *See Austin v. Johnson*, 328 F.3d 204, 208 (5th Cir. 2003); *Rogge v. City of Richmond, Tex.*, 995 F. Supp. 2d 657, 666 (S.D. Tex. Jan. 31,

2014) (citing *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)).

With respect to the Hokes' Fourth Amendment claim, the parties do not dispute, and the video evidence clearly shows, that:

> (1) Defendants did not offer the Hokes water to wash off the pepper spray until after they had escorted them to the building Defendants were using as a staging area for the evening;
> (2) Defendants poured less than a pitcher of water on Amanda Hoke's face and asked her if more was needed;
> (3) Sarah Hoke's face was also rinsed; and
> (4) EMS stood nearby while the Hokes were thus decontaminated.

(Resp., Dkt. 54, at 17; Reply, Dkt. 56, at 9; Model Body Camera Video, Dkt. 54-12, at 6:25–7:12; S. Hoke Dep., Dkt. 54-3, at 55).[1] The Hokes argue, however, that Defendants should have "immediately" washed the pepper spray off, used "copious amounts of water" to do so (for instance a shower), and should have called an ambulance so that the Hokes could be decontaminated at a hospital instead of sending them to jail. (Resp., Dkt. 54, at 22–23).

But the Hokes fail to cite any authority for the proposition that Defendants were required to take these particular decontaminating actions or that the actions Defendants took were constitutionally impermissible. Indeed, the Fifth Circuit has already rejected arguments similar to the Hokes'. In *Wagner v. Bay City, Tex.*, 227 F.3d 316 (5th Cir. 2000), the court addressed a § 1983 challenge against several officers for, among other things, their use of pepper spray. The court defined decontamination as "consist[ing] primarily of flushing the eyes with water." *Id.* at 319 n.1. In reversing the district court's partial denial of summary judgment, the Fifth Circuit rejected the suggestion that the arrestee needed to be decontaminated at a hospital and found that decontamination could have occurred "in any number of places, including the jail, the hospital, or

---

[1] Although the Court has struck Sarah Hoke's expert testimony, it has not struck her opinion testimony. (Dkt. 55, at 8).

8

even on the scene." *Id.* at 325. The decontamination did not occur immediately, and the court also noted that the jail—where the decontamination was supposed to occur—was closer than the hospital. *Id.* Additionally, the court warned that the district court's "worry" about the fact that the arrestee was not decontaminated on the scene was the kind of "20/20 hindsight" inappropriate in determining whether an officer is entitled to qualified immunity. *Id.*

Thus, not only do the Hokes fail to cite any authority indicating that it is clearly established law that Defendants needed to "immediately" use "copious amount of water" to decontaminate them, or that decontamination should have occurred at a hospital, but case law suggests the opposite. The undisputed evidence in this case shows that Defendants rinsed the Hokes' faces with water, consistent with the Fifth Circuit's definition of decontamination; that they did so within minutes of deploying pepper spray on them; and that Defendant Anderson even asked Amanda Hoke whether she felt better and wanted more water. (*See* Pepper Spray Incident Video, Dkt. 47-3; Model Body Camera Video, Dkt. 47-6, at 0:01–7:25).[2] That Defendants did not do more does not rise to the level of a violation of a clearly established constitutional right.

Accordingly, the Hokes have not shown that Defendants' conduct with respect to decontaminating them from the pepper spray violated a clearly established constitutional right. Defendants are therefore entitled to qualified immunity as to this claim.

### D. Unreasonable Arrest

Finally, the Hokes claim that Defendants unreasonably arrested them in violation of their Fourth Amendment rights. (1st Am. Compl., Dkt. 2, ¶ 28). Their arrest was unreasonable, the Hokes

---

[2] Where this case may differ from *Wagner* is that here, the Hokes allege (and Defendants do not dispute) that their whole bodies were covered with pepper spray. Thus, merely "flushing the eyes with water" may not have sufficiently decontaminated them from the pepper spray. Nevertheless, *Wagner* shows that *any* amount of decontamination need not occur immediately because in that case, the decontamination was anticipated to happen at the jail. 227 F.3d at 319. The officers in *Wagner* did not commit a constitutional violation merely because they waited to decontaminate the arrestee until he had been transported to jail. *Id.* at 325. Similarly, Defendants in this case did not commit a constitutional violation because they did not flush the Hokes' whole bodies with water before transporting them to jail.

9

argue, because Defendants did not conduct an investigation and arrested them without probable cause. (*Id.*). More specifically, the Hokes argue that Defendant Model—the arresting officer—"did not bother to ask any of the officers if they captured the beginning of the altercation on their body cameras," (Resp., Dkt. 54, at 22), and "[t]he Travis County magistrate who received the probable cause affidavit for their arrests refused to sign off on the arrests and found no probable cause," (1st Am. Compl., Dkt. 2, ¶ 20).

These facts are undisputed but irrelevant; it does not matter who started the fight or that the magistrate judge did not ultimately find probable cause. Defendants assert, and the Hokes do not dispute, that the Hokes were arrested for disorderly conduct under Texas Penal Code § 42.01, because they were fighting right in front of Defendants. (Mot., Dkt. 47, at 14). Texas Penal Code § 42.01 makes it unlawful to "fight[ ] with another in a public place"—it makes no mention of who started the fight. To determine whether an officer is shielded by qualified immunity from a wrongful arrest claim, the Court asks whether "a reasonable officer could have believed the arrest at issue to be lawful, in light of clearly established law and the information the arresting officers possessed." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). The video evidence clearly shows that the Hokes were fighting in a public place in front of Defendants; no reasonable jury could find that Defendants lacked probable cause to arrest the Hokes for violating Penal Code § 42.01. (*See* Bystander Video, Dkt. 54-13, at 0:01–0:40). Accordingly, because the Hokes have failed to show that Defendants wrongfully arrested them, Defendants are entitled to qualified immunity with respect to that claim.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendants' motion for summary judgment, (Dkt. 47), is **GRANTED**. Defendants are entitled to qualified immunity as to all of the Hokes' claims against them. Final judgment will be entered by separate order.

**SIGNED** on June 6, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE